**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOCAL 194, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO, et al., | Civil Action No.: 11-1653 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| THE NEW JERSEY TURNPIKE AUTHORITY, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Plaintiffs' application for a preliminary injunction, filed on March 24, 2011. Oral argument was held on April 6, 2011, and at its conclusion the Court granted the parties one week to submit supplementary briefing regarding certain questions raised by the Court. The Court has considered the arguments of counsel and the submissions of the parties in support of and in opposition to the present application, and for the reasons set forth below, Plaintiffs' Complaint will be dismissed, and Plaintiffs' application for a preliminary injunction will be denied as moot.

## I.    BACKGROUND

Plaintiff Local 194, International Federation of Professional and Technical Engineers, AFL-CIO ("Local 194") is a labor union that is party to a collective bargaining agreement with

Defendant the New Jersey Turnpike Authority (the "NJTA"), a public agency within the New Jersey Department of Transportation.  Local 194 represents full- and part-time toll collectors currently employed by the NJTA.

In March 2010, the Governor of New Jersey created the New Jersey Privatization Task Force (the "Task Force").  A few months later, the Task Force issued a report to the Governor identifying manual toll collection jobs within the NJTA as candidates for privatization. Approximately 300 full-time and 380 part-time NJTA toll collectors are currently represented by Local 194.  On November 10, the NJTA informed Local 194 of its intent to pursue the Task Force's privatization recommendation, and on or about January 19, 2011, the NJTA issued a Request for Proposal for Toll Attendant Services (the "RFP") to be provided to potential bidders. The RFP contained the following "Right of First Refusal" provision:

> As a result of this contract Toll Attendants that are currently employed by NJTA will be separated from employment.  Additionally, due to Collective Bargaining Agreement language, Roadway Maintenance Personnel on the Parkway may also be separated from employment.  The Contractor must give each employee separated from employment as a result of this contract with NJTA the right of first refusal to accept a Toll Attendant position under the contract.  This includes all toll attendants covered under Local 194 & Local 196 collective bargaining agreements . . . .

(Br. in Supp. of Pls.' Order to Show Cause and Prelim. Inj., Certif. of Franceline Ehret ("Ehret Certif."), Ex. H.)

During the period of time leading up to the issuance of the RFP and continuing thereafter, members of Local 194 attended public meetings held by the NJTA and voiced their opposition to the privatization plan.  Local 194's President, Plaintiff Franceline Ehret, expressed concern that the plan would cause union members to lose their jobs and that privatization would both weaken

security along the heavily traveled turnpike corridor and impair the State's ability to respond to snow and ice events.  On February 7, the NJTA held a mandatory pre-proposal meeting, which was attended by approximately twenty-three potential bidders, along with approximately sixty picketing union members.  The following day, Ehret sent a letter to the members of Local 194 urging them to attend the next NJTA Board of Commissioners meeting, which was to be held on February 23.  Ehret's letter further urged Local 194 members to create résumés and cover letters, which the union would then forward to the potential bidders.  Ehret's letter stated that many bidders "WILL NOT want to come here when they see all the UNION MEMBERS who want these jobs."  (Ehret Certif., Ex. J.)  On February 18, Local 194 gathered the résumés and cover letters and submitted them to the potential bidders.

On February 22, 2011, bidders began notifying the NJTA that they had received numerous résumés and cover letters from and that as a result they would not submit a response to the RFP.  At oral argument, counsel for Defendants stated that three potential bidders, each of whom had attended the mandatory pre-proposal meeting on February 7, advised the NJTA that they would not be submitting bids, and that two other companies "submitted withdrawals."  (Tr. of Proceedings, Apr. 6, 2011 ("Hr'g Tr."), 51:7–19, 52:12–19.)

On February 25, the NJTA issued an addendum to the RFP that removed the union members' Right of First Refusal.  The addendum revised the RFP to state that every toll collector would be given an "equal opportunity" for employment with the winning contractor.  (Defs.' Br. in Opp'n to Pls.' Appl. for Prelim. Inj. Relief at 7.)  The Right of First Refusal was removed as to both Local 194 and Local 196, another labor union subject to a collective bargaining agreement with the NJTA.  Local 196 is not a party to this action.  The amended RFP indicates that the

closing date for submission of proposals was March 14, 2011.  (Decl. of Veronique Hakim

("Hakim Decl."), Ex. E.)  At oral argument, counsel for Defendants stated that, of the twenty-

three companies that had attended the mandatory pre-proposal meeting, only four had submitted

bids.  (Hr'g Tr. 51:24–55:11.)

On March 15, 2011, Local 196 filed an "Unfair Practice Charge" with the New Jersey

Public Employment Relations Commission ("PERC") against the NJTA.  The charge alleges

violations of the New Jersey Employer-Employee Relations Act, N.J. Stat. Ann. § 34:13A-1 et

seq., claiming that the NJTA's removal of the Right of First Refusal was made "in retaliation for

[the union's] protected activity."  (Hakim Decl., Ex. N.)

On March 24, Plaintiffs filed the instant federal action asserting claims under 42 U.S.C. §

1983 and state law.  Their Complaint alleges that the NJTA retaliated against Local 194 and its

members as a result of their engaging in conduct protected under the First Amendment and under

analogous provisions of the New Jersey Constitution.  On March 25, this Court issued an Order

to Show Cause why a preliminary injunction should not issue to restrain the NJTA from

awarding the toll collection contract without the Right of First Refusal, setting oral argument for

April 6.  (Docket Entry No. 2.)

On March 30, the NJTA filed a "Scope of Negotiations Petition and Unfair Practice

Charge" with PERC against Local 194.  (Hakim Decl., Ex. O.)  The NJTA seeks "(1) a

determination that the decision to subcontract the toll collectors' work is not mandatorily

negotiable, and (2) issuance of unfair practice Complaint alleging the Union has violated the

New Jersey Employer- Employee Relations Act . . . by its conduct in attempting to force the

[NJTA] to negotiate about a subcontracting decision."  (Id.)

On April 6, 2011, the Court heard oral argument on Plaintiff's application for a preliminary injunction. At that hearing, issues were raised that had not been addressed in detail in the parties' briefs. The Court therefore ordered that the record be held open for an additional seven days to allow the parties to submit supplemental briefing on those issues.

## II.   JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs state claims arising under 42 U.S.C. § 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims.

## III.   DISCUSSION

Plaintiffs seek a preliminary injunction restraining the NJTA from awarding the toll collection subcontract without Local 194 members being granted a right of first refusal to accept positions with the incoming private subcontractor. Defendants respond that this Court should abstain from exercising its jurisdiction over Plaintiffs' claims in light of the doctrine developed under Younger v. Harris, 401 U.S. 37 (1971), to avoid interfering with actions currently pending before PERC.[1]

District courts have "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005). However, "abstention rarely should be invoked, and is only appropriate in a few carefully defined situations." Id. (citations and quotations omitted). Three

---

[1]Defendants also argue that abstention is appropriate under Burford v. Sun Oil Co., 319 U.S. 315 (1943), and its progeny and that, in the alternative, a preliminary injunction is not warranted in this case.

requirements must be met before <u>Younger</u> abstention is appropriate: "(1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues." <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 789 (3d Cir. 1994) (<u>citing</u> <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)). However, even if these three elements are satisfied, abstention is not appropriate where the federal claimant makes a showing of bad faith, harassment, or some other extraordinary circumstance, "such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989).

**A.       Pending or Ongoing Proceeding That is Judicial in Nature**

Under the first element of the <u>Younger</u> analysis, administrative proceedings are "judicial in nature" if they "rise to the level of adjudication." <u>Zahl v. Harper</u>, 282 F.3d 204, 209 (3d Cir. 2002). The parties do not dispute that actions brought before PERC are adjudicatory in nature. However, a court may only abstain when state proceedings are "pending or ongoing." Here, Defendants argue that two actions currently before PERC are pending or ongoing for purposes of <u>Younger</u> abstention.

The first PERC action was filed on March 15, 2011, by Local 196 against the NJTA. Local 196 is not a party to this federal action, and Local 194 was not named as a party to Local 196's PERC action. Generally, "where the plaintiff in a federal action is not a party to the state proceeding, <u>Younger</u> concerns about federal adjudication do not arise." <u>Sullivan v. City of</u>

Pittsburgh, 811 F.2d 171, 177 (3d Cir. 1987).  But, parties that are "too closely related should be treated as one party for Younger purposes."  Id.  Unitary treatment, however, is limited to "an employer's federal suit when its employees assert identical interests in state court" and "cases in which federal plaintiffs are closely related to state defendants 'in terms of ownership, control and management.' "  Id. at 178 (quoting Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975)). Defendants argue for a more expansive definition of this exception, contending that a mere alignment of economic interests between Local 194 and Local 196 is sufficient to warrant unitary treatment under Younger.  (Hr'g Tr. 32:20–33:5.)  While the Third Circuit in Sullivan did note that the unitary treatment inquiry looks for "an identity of economic activities and interests," 811 F.2d at 178, Defendants have provided no precedent to support their contention that a more vague interest analysis should supplant the two narrow exceptions identified in that case.[2] Rather, courts in this Circuit have explicitly recognized the limited scope of the Sullivan exceptions.  See Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Falls, 876 F. Supp. 641, 660–61 (D.N.J. 1995) (stating that identity of economic activities and interests "is present only in two types of cases," those described in Sullivan).  As Defendants do not contend that an employer-employee relationship or an ownership, control, or management relationship exists between Local 196 and Local 194, the Court concludes that the PERC action filed by Local 196 does not satisfy the first prong of the Younger analysis.

The second PERC action was filed on March 30, 2011, by the NJTA against Local 194,

---

[2]Defendants instead rely on Spargo v. New York State Commission on Judicial Conduct, 351 F.3d 65 (2d Cir. 2003), a decision that is not binding on this Court.  Spargo involved a claim that certain non-parties' First Amendment rights were derivative of a party's First Amendment rights and thus warranted unitary treatment.  No such derivative claim is asserted here.

both of which are parties to this action.[3]  Plaintiffs' Complaint here was filed on March 24.  The

NJTA's claims against Local 194, therefore, were filed six days after this action was filed, but

one week before this Court's April 6 hearing regarding Plaintiffs' application for a preliminary

injunction.  Where state proceedings are initiated after the federal complaint is filed, "but before

any proceedings of substance on the merits have taken place in federal court, the principles of

Younger v. Harris should apply in full force."  Middlesex, 457 U.S. at 436–37 (citing Hicks v.

Miranda, 422 U.S. 332, 349 (1975)).  But, where a preliminary injunction has been granted,

"considerations of economy, equity, and federalism counsel against Younger abstention at that

point."  Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 238 (1984); cf. Ocean Grove Camp

Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 F. App'x 232, 240 (3d Cir.

2009) (holding that a court's denial of a preliminary injunction motion is not a proceeding of

substance on the merits).  In Doran v. Salem Inn, the Supreme Court held that Younger

abstention was necessary even though, before the state action was initiated, the federal district

court had denied a temporary restraining order and set a hearing date for a preliminary injunction

motion.  422 U.S. at 924–25.  Similarly, the Court here had only scheduled a preliminary

injunction hearing at the time the NJTA filed its PERC action.  Thus, as in Doran, no

"proceedings of substance on the merits" had yet occurred in this case.  The NJTA's PERC

action against Local 194 is therefore "pending or ongoing" for the purposes of Younger

abstention.  As such, the first element of the Younger analysis is satisfied.  The remaining

elements will be analyzed with respect to this second PERC action only.

---

[3]It is undisputed that plaintiffs to this federal action who were not specifically named as
parties to the PERC action—such as Ms. Ehret, President of Local 194, and various Local 194
members—satisfy the unitary treatment criteria under Sullivan.

**B.**    **State Proceedings Implicating Important State Interests**

As to the second element of the <u>Younger</u> analysis, abstention is appropriate in matters in which "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 (1987). This consideration of comity necessarily includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." <u>Younger</u>, 401 U.S. at 44. However, the Court must examine the "importance of the generic proceedings to the State," rather than the State's narrow interest in the outcome of the particular case. <u>O'Neill</u>, 32 F.3d at 791–92.

New Jersey has established a comprehensive statutory and regulatory scheme to govern labor and personnel matters for public employees. <u>See</u> N.J. Stat. Ann. §§ 34:13A-1 <u>et</u> <u>seq</u>. The New Jersey Employer-Employee Relations Act (the "Act") authorizes PERC to "make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration including enforcement of statutory provisions concerning representative elections and related matters and to implement fully all the provisions of" the Act. <u>Id.</u> at § 34:13A-5.2. Section 5.4(c) of the Act grants PERC the adjudicatory power to prevent unfair practices specified in §§ 5.4(a) and (b), and § 5.4(d) gives PERC the authority to determine whether a contract proposal lies within the scope of collective negotiations. This framework evidences New Jersey's substantial interest in labor-management relations, particularly in matters involving public employees, like the

plaintiffs in this case.  See Local 54 Patrolman's Benevolent Association v. Fontoura, No. 06-6278, 2007 WL 4165158, at *4 (D.N.J. Nov. 19, 2007) (recognizing the State's interest in using PERC to adjudicate labor disputes involving state law enforcement).  Federal involvement in this case would clearly interfere with the State's interest in regulating public employment matters, as while the federal courts have a continuing obligation to protect the speech and association rights of all citizens, the states share this obligation, and our federalism counsels that the states should be free to oversee matters of uniquely local concern.  To interfere with the State's operation in this area "would be to engage in the sort of judicial action that Younger and its progeny explicitly prohibit."  Id.  Thus, considering the generic importance of the proceedings to the State of New Jersey in light of the considerations of comity that underlie the Younger doctrine, the Court concludes that the PERC proceedings implicate important state interests and that Defendants have therefore satisfied the second element of the analysis.

**C.     Opportunity to Raise Constitutional Issues**

The third element of the Younger analysis "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination."  O'Neill, 32 F.3d at 792.  The plaintiff has the burden of establishing that "state procedural law barred presentation of [its] claims" in an administrative action or before the state courts.  Schall, 885 F.2d at 107 (quoting Pennzoil, 481 U.S. at 14) (alteration in original); see Middlesex, 457 U.S. at 432 ("Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims") (internal quotation and citation omitted).  Moreover, "when a litigant has not attempted to present his federal claims in related state-court proceedings,

a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." O'Neill, 32 F.3d at 792 (quoting Pennzoil, 481 U.S. at 15).

 In Hunterdon Central High School Board of Education v. Hunterdon Central High School Teachers' Association, 416 A.2d 980 (N.J. Super. Ct. App. Div. 1980), aff'd o.b., 429 A.2d 354 (N.J. 1981), the Appellate Division considered a ruling by PERC which stated that if a school board were to grant its teachers paid leaves of absence for religious purposes, such action would violate the Establishment Clause of the First Amendment.  The matter came before PERC by way of a scope of negotiations petition filed by the school board to determine whether certain teachers' requests for paid leaves of absence on religious holidays fell within the scope of collective negotiations.  In reviewing the agency's decision, the Appellate Division affirmed that "PERC's delegated authority is broad enough to enable it to apply laws other than that which it administers, and should be construed 'so as to permit the fullest accomplishment of the legislative intent.' "  Id. at 983 (quoting Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n, 366 A.2d 703, 705 (N.J. Super. Ct. App. Div. 1976)).  The court reasoned that while administrative agencies are typically barred from passing on the constitutionality of legislation, PERC acted within its power in adjudicating a constitutional issue that was necessary to deciding matters within the agency's statutory authority and thus "germane" to the proceedings before it.  Id. Since Hunterdon, it has become well settled that PERC may decide constitutional questions that are necessary to adjudicate the statutory questions before it.  See Todaro v. Township of Union, 27 F. Supp. 2d 517, 527 (D.N.J. 1998) ("PERC has jurisdiction to interpret and apply laws outside the Act only to the extent that those laws are necessary to resolve a statutory claim under

the Act"); <u>Fioriglio v. City of Atlantic City</u>, 963 F. Supp. 415, 424 (D.N.J. 1997); <u>Christian Bros.

Inst. of New Jersey v. N. New Jersey Interscholastic League</u>, 432 A.2d 26, 29 (N.J. 1981); <u>see

also</u> <u>Kelly v. Borough of Sayreville</u>, 107 F.3d 1073, 1079 (3d Cir. 1997) (McKee, J.,

concurring).[4]

The NJTA's action before PERC first seeks a determination as to the scope of its required

negotiations with Local 194 and further alleges unfair labor practices by the union in demanding

such negotiations.  The scope petition asks PERC "to make a determination as to whether the

[NJTA's] decision to subcontract work performed by toll collectors is within the scope of

collective negotiations."  (Hakim Decl., Ex. O.)  The NJTA argues that "[t]he decision to

subcontract said work is a matter of inherent managerial prerogative and, therefore, not within

the scope of negotiations."  (<u>Id.</u>)  The NJTA's unfair practice charge alleges that Local 194

"continues to demand and insist that [the NJTA] negotiate over its decision to subcontract the

work of toll collectors.  The decision to subcontract is a non-negotiable matter of inherent

---

[4]In <u>Kelly</u>, the Third Circuit affirmed the district court's Rule 12(b)(6) dismissal a § 1983 claim alleging First Amendment violations, but expressed "significant reservations" as to the district court's alternative holding that the entire controversy doctrine barred the constitutional claim in light of a parallel action that the plaintiff had filed with PERC.  107 F.3d at 1075.  The district court had held, in part, that the plaintiff had a "full and fair opportunity" to raise his First Amendment claims before PERC and was thus barred from raising them in federal court.  <u>Kelly v. Borough of Sayreville</u>, 927 F. Supp. 797, 803 (D.N.J. 1996).  In a concurring opinion, then Judge McKee elaborated on the court's "reservations" regarding the district court's entire controversy ruling, stating that "PERC has a well-established practice of refusing to hear constitutional claims except insofar as they relate to statutory claims properly before it under the Act," and that the agency's refusal to hear the plaintiff's constitutional claim was proper "because that claim was not integral to the resolution of the labor dispute which was properly before the administrative body."  <u>Kelly</u>, 107 F.3d at 1079–80 (citing <u>Hunterdon</u>).  Judge McKee relied in part on an amicus brief filed by PERC explaining its authority to hear such matters, which argued that PERC's jurisdiction is limited to resolving statutory claims and "does not extend to resolving federal constitutional claims unless necessary to resolve such statutory claims."  <u>Id.</u> (quoting Brief of Amicus Curiae at 6).

managerial prerogative." (Id.) The NJTA argues that Local 194's "negotiations demands are in bad faith and contrary to established [PERC] precedent." (Id.)

Defendants argue that the NJTA's scope of negotiations petition affords Plaintiffs ample opportunity to raise their constitutional claims. Plaintiffs respond that Local 194's litigation strategy with respect to the scope petition obviates any need for it to raise a First Amendment defense before PERC. On April 1, 2011, counsel for Local 194 filed a letter with PERC indicating its agreement as to the nonnegotiability of the matter in question. (See Reply Br. in Supp. of Pls.' Order to Show Cause and Prelim. Inj. ("Pls.' Reply Br."), Certif. of Ira Mintz, Ex. 1.) The letter states, "Local 194 agrees that the New Jersey Turnpike Authority has the managerial prerogative to subcontract and that the ultimate decision to subcontract is not within the scope of negotiations." (Id.) Plaintiffs contend that this stipulation renders its First Amendment retaliation claims "irrelevant" to the PERC action, thus making Younger abstention inapplicable. (Pls.' Letter to this Court dated Apr. 13, 2011 ("Pls.' Letter Br."), at 5.)

The relevant inquiry under Younger, however, is not whether a plaintiff in fact presents his constitutional claims to the state agency, but whether state procedural law bars presentation of such claims. Simply because Plaintiffs do not intend to raise a constitutional issue does not imply that one could not be raised, and under Younger Plaintiffs bear the burden of demonstrating that the latter, not the former, is true. While Plaintiffs recognize that PERC has the authority to decide constitutional questions that are necessary to adjudicating statutory claims (Pls.' Letter Br. at 4), Plaintiffs argue that because they agree that the NJTA has the "managerial prerogative" to subcontract, no constitutional issue need be raised. Plaintiffs have nonetheless filed this federal lawsuit to enjoin, on constitutional grounds, the ultimate award of that

subcontract.  Plaintiffs have complained to this Court that because the NJTA has committed constitutional violations against the union, it should not be permitted to award the toll collections subcontract until those violations are remedied.  Put another way, Plaintiffs have alleged that the NJTA has no "managerial prerogative" to subcontract under such circumstances.  The Court thus fails to see how the proceedings before PERC do not fundamentally address the same issues as those here.

While, as Plaintiffs suggest, constitutional objections to a scope petition would ordinarily be raised by the party seeking to avoid collective negotiations—like the school board in Hunterdon—Plaintiffs point to no authority that restricts PERC from holding that a constitutional violation defeats an employer's claim of managerial prerogative.  Cf. N.J. Stat. Ann. § 34:13A-5.3 ("public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization or to refrain from any such activity"); Warren Hills Reg'l Bd. of Educ. v. Warren Hills Reg'l High Sch. Educ. Ass'n, 2005 WL 3487979, at *1 (N.J. Super. Ct. App. Div. 2005) (holding on state law grounds that while "[a] public employer has the managerial prerogative to contract with private companies for work previously performed by public employees . . . the decision to contract out work may not be motivated by a desire to retaliate for, or discourage, union activity") (citing In re Twp. of Bridgewater, 95 N.J. 235 (1984)).  Instead, Plaintiffs cite to cases holding that matters which would otherwise be negotiable may be rendered nonnegotiable by a preempting statute or regulation.  See, e.g., Local 195, IFPTE, AFL-CIO v. State, 443 A.2d 187, 192 (N.J. 1982).  These cases, however, do not address constitutional challenges and do not purport to limit Hunterdon's basic principle that "PERC's delegated authority is broad enough to

enable it to apply laws other than that which it administers, and should be construed so as to permit the fullest accomplishment of the legislative intent."  416 A.2d at 983 (quotation omitted). Plaintiffs point to no "unambiguous authority" that restricts PERC's broad power to decide constitutional questions that are germane to the proceedings before it and whose resolution is necessary to adjudicate a party's statutory claims.

Here, Plaintiffs' constitutional claims not only bear on the statutory matters that PERC is charged with administering, but PERC must necessarily resolve those claims in order to determine whether the NJTA has a managerial prerogative to award the instant subcontract. Once Plaintiffs' First Amendment defense is raised, PERC could not adjudicate the scope of negotiations petition without first deciding, as in Hunterdon, whether the employer's decision would violate the employees' constitutional rights.  Should PERC hold that the subcontracting dispute lies within the scope of collective negotiations, the matter could then proceed through the appropriate dispute resolution process, a remedy that Plaintiffs have not argued to be inadequate. See O'Neill, 32 F.3d at 792 ("a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary").  If PERC were to refuse to entertain Plaintiffs' constitutional claim on the grounds that it is not competent to hear such matters, it is undisputed that Plaintiffs may still appeal the matter to the Appellate Division, and beyond.  See N.J. Stat. Ann. § 34:13A-5.4(d) (providing for appellate review of "[a]ny determination" made by PERC pursuant to the subsection of the Act regarding scope petitions); Zahl, 282 F.3d at 210 (holding that the third prong of the Younger analysis is satisfied if the plaintiff could "assert his preemption claim in the administrative proceeding itself and . . . have it reviewed by the New Jersey Appellate Division"); Christian Bros., 432 A.2d at 29 (noting that

Page 15 of  17

even if the plaintiff were not able to raise his constitutional claims before the administrative agency, the "proper procedure was to raise these claims before the Appellate Division upon appeal from [the] adverse decision"). As such, Plaintiffs have failed to carry their burden of establishing that state procedural law bars presentation of their constitutional claims to PERC.

Plaintiff raises similar nonnegotiability arguments with respect to the NJTA's unfair practice charge, again pointing to the stipulation filed by the Local 194 with PERC. (See Pls.' Letter Br. at 3.) The Court, however, declines to address whether that charge would provide an independent basis for Younger abstention, except to note that the overlap of issues between the unfair practice charge and the scope petition bolsters Defendants' argument that Plaintiffs' constitutional claims are "germane" to the ongoing proceedings before PERC. As that forum provides an adequate opportunity for Plaintiffs to raise such claims, the Court concludes that Defendants have satisfied the third prong of the Younger analysis. Plaintiffs do not argue that any of the narrow exceptions to Younger abstention apply, and the exceptional circumstances warranting such an exception are not apparent from the record. The Court therefore concludes that it would "offend principles of comity" to interfere with the ongoing PERC proceedings and abstains from exercising its jurisdiction over this matter.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that Younger abstention is appropriate in this case. Plaintiffs' Complaint will be dismissed with prejudice, see Lui v. Comm'n on Adult Entm't of Del., 369 F.3d 319, 327 (3d Cir. 2004) (holding that "a Younger abstention stay

---

[5]Having so ruled, the Court declines to address Defendant's arguments regarding Burford abstention and does not reach the merits of Plaintiffs' application for a preliminary injunction.

requires a dismissal with prejudice of the federal suit"), and Plaintiffs' application for a

preliminary injunction will be denied as moot.  An appropriate Order accompanies this Opinion.


DATED: April 21, 2011                              /s/ Jose L. Linares
                                                   JOSE L. LINARES
                                                   UNITED STATES DISTRICT JUDGE